<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **TRAVELODGE HOTELS, INC.,** <br><br> **Plaintiff,** <br><br> v. <br><br> **LHS PENSACOLA #5, INC.,** <br><br> **Defendant.** | **Civil Action No. 13-4258 (ES) (MAH)** <br><br> **OPINION** |

**SALAS, DISTRICT JUDGE**

## I.    Introduction

This action arises out of a licensing agreement between Plaintiff licensor Travelodge Hotels, Inc. ("THI") and Defendant licensee LHS Pensacola #5, Inc. ("LHS"), which permitted LHS to operate a Travelodge® facility.  In its Amended Complaint, THI alleges that it terminated the agreement after LHS failed to pay certain recurring fees under the agreement.  Presently before the Court is THI's unopposed Motion for Summary Judgment on Counts Two, Four, and Five of its Amended Complaint.  (D.E. No. 20).  The Court decides this motion without oral argument in accordance with Federal Rule of Civil Procedure 78.  For the reasons stated below, Plaintiff's motion is granted.

## II.   Factual Background[1]

---

[1] These background facts are taken from Plaintiff's Statement of Undisputed Material Facts in accordance with L.Civ.R. 56.1.  (D.E. No. 20-3, Statement of Undisputed Material Facts ("SUMF")).  Since the non-moving party failed to oppose the motion for summary judgment, the Court "will accept as true all material facts set forth by the moving party with appropriate record support."  *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990).

A. The Parties and the Agreement

Plaintiff THI is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Parsippany, New Jersey. (SUMF ¶ 1). THI does not own or operate any hotels. (*Id.* ¶ 3). Instead, THI operates a guest lodging facility franchise system comprised of federally registered trade names, service marks, logos, and derivations thereof (the "Travelodge® Marks"), as well as the distinctive Travelodge® System. (*Id.*). According to THI, LHS is a corporation organized and existing under the laws of the State of Florida, with its principal place of business at 6919 Pensacola Boulevard, Pensacola, Florida. (*Id.* ¶ 4).[2] Jay S. Patel is president and fifty-percent owner of LHS. (*Id.* ¶ 5).

On or about March 12, 2007, THI entered into a license agreement (the "Agreement") with LHS for the operation of a 60-room Travelodge® guest lodging facility located at 6950 Pensacola Boulevard, Pensacola, Florida 32505, designated as Site No. 10703-70291-02 (the "Facility"). (*Id.* ¶ 6). Mr. Patel executed the Agreement on behalf of LHS, after reviewing the Agreement. (*Id.* ¶¶ 7, 8).

Pursuant to Section 5 of the Agreement, LHS was obligated to operate the Facility for a fifteen-year term. (*Id.* ¶ 9). Pursuant to Section 7, Section 18.1, and Schedule C of the Agreement, LHS was required to make certain periodic payments to THI for royalties, system-assessment fees, taxes, interest, reservation system-user fees, and other fees (collectively, "Recurring Fees"). (*Id.* ¶ 10; *see also id.* ¶¶ 11–14). Mr. Patel understood that LHS was obligated to pay certain fees to THI in accordance with the Agreement. (*Id.* ¶ 16).

Pursuant to Section 11.2 of the Agreement, THI could terminate the Agreement, with notice to LHS, for various reasons, including LHS's (a) failure to pay any amount due THI under

---

[2] The Court accordingly has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is complete diversity between the parties and the amount in controversy exceeds $75,000.

the Agreement, (b) failure to remedy any other default of its obligations or warranties under the Agreement within 30 days after receipt of written notice from THI specifying one or more defaults under the Agreement, and/or (c) receipt of two or more notices of default under the License Agreement in any one year period, whether or not the defaults were cured. (*Id.* ¶ 20).

Pursuant to Section 12.l of the Agreement, LHS agreed that, in the event of a termination of the Agreement pursuant to Section 11.2, it would pay liquidated damages to THI in accordance with a formula specified in the Agreement. (*Id.* ¶ 21). Section 18.2 of the Agreement specifically set liquidated damages for the Facility at $1,000.00 for each guest room of the Facility LHS was authorized to operate at the time of termination; thus, LHS agreed to liquidated damages in the amount of $60,000.00 ($1,000 x 60 rooms). (*Id.* ¶ 22).

Pursuant to Section 7.3 of the Agreement, LHS agreed that interest is payable "on any past due amount payable to [THI] under this Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid." (*Id.* ¶ 15). Furthermore, pursuant to Section 17.4 of the Agreement, LHS agreed that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement." (*Id.* ¶ 23).

    B.  <u>LHS's Defaults and THI's Termination</u>

LHS repeatedly failed to meet its financial obligations under the Agreement. (*Id.* ¶ 26). By letter dated February 7, 2013, THI advised LHS that (a) it was in breach of the Agreement because it owed THI approximately $96,852.38 in outstanding Recurring Fees, (b) it had 10 days within which to cure this monetary default, and (c) if the default was not cured, then the Agreement might be subject to termination. (*Id.* ¶ 27). Jay S. Patel, as president of LHS, received the February

7, 2013 monetary default letter from THI. (*Id.* ¶ 28). By letter dated December 17, 2013, THI advised LHS that (a) it was in breach of the Agreement because it owed THI approximately $130,071.38 in outstanding Recurring Fees, (b) it had 10 days within which to cure this monetary default, and (c) if the default was not cured, then the Agreement might be subject to termination. (*Id.* ¶ 29). Jay S. Patel, as president of LHS, received the December 17, 2013 monetary default letter from THI. (*Id.* ¶ 30).

By letter dated December 31, 2013, THI terminated the Agreement effective December 31, 2013, and advised LHS that it was required to pay to THI $60,000.00 as liquidated damages for premature termination of the Agreement, and all outstanding Recurring Fees through the date of termination. (*Id.* ¶ 31). Jay S. Patel, as president of LHS, received the December 31, 2013 termination letter from THI. (*Id.* ¶ 32). Despite due demand, LHS has not paid THI the outstanding Recurring Fees or liquidated damages due under the Agreement, nor has it paid any interest on these items. (*Id.* ¶ 33).

As set forth in the Affidavit of Suzanne Fenimore, (D.E. No. 20-5 ("Fenimore Aff.")), and the Certification of Bryan P. Couch, (D.E. No. 20-6 ("Couch Cert.")), LHS seeks a total of $229,743.33 in damages. (SUMF ¶ 43). This amount is comprised of: $151,821.22 in Recurring Fees (inclusive of the 1.5% interest rate set forth in the Agreement), (*id.* ¶ 34); $69,439.21 in liquidated damages (also inclusive of the 1.5% interest rate), (*id.* ¶¶ 35–41); and $8,482.90 in attorneys' fees and costs, (*id.* ¶ 42).

### III.     Procedural Background

On July 12, 2013, THI filed a complaint in the United States District Court of the District of New Jersey against LHS. (D.E. No. 1). THI asserted claims against LHS for breach of the License Agreement, including claims for outstanding Recurring Fees, interest, attorneys' fees, and

4

costs. (*Id.*). On December 2, 2013, LHS filed an answer to the complaint. (D.E. No. 7). On December 31, 2013, THI terminated the Agreement due to LHS's ongoing monetary default. (*See* D.E. No. 12). On May 29, 2014, THI properly amended its complaint to include a claim for liquidated damages, in addition to its pending claims for Recurring Fees, interest, attorneys' fees, and costs. (D.E. No. 14).

By Order dated October 16, 2014, Magistrate Judge Michael A. Hammer granted THI permission to file a dispositive motion with the Court by November 21, 2014. (*See* D.E. No. 19). THI filed the present motion for summary judgment on November 21, 2014. (D.E. No. 20). LHS did not file opposition. The motion is now ripe for adjudication.

**IV.     Legal Standard**

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact, and if, when viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to a judgment as a matter of law. *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *accord* Fed. R. Civ. P. 56(c). A genuine issue of material fact exists for trial when a reasonable finder of fact could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "To be material, a fact must have the potential to alter the outcome of the case." *DeShields v. Int'l Resort Properties Ltd.*, 463 F. App'x 117, 119 (3d Cir. 2012).

The moving party must first show that no genuine issue of material fact exists. *Celotex Corp.*, 477 U.S. at 323. If the movant meets this burden, the burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. *Id.* at 324. Although the Court must consider all facts and their reasonable inferences in the light most favorable to the

non-moving party, *see Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995), the non-moving party must offer specific facts that establish a genuine issue of material fact—not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings, or unsupported assertions, bare allegations, or speculation to defeat summary judgment. *See Celotex,* 477 U.S. at 324; *Longstreet v. Holy Spirit Hosp.*, 67 F. App'x 123, 126 (3d Cir. 2003).

## V.   Discussion

THI claims that LHS is liable under the Agreement for outstanding Recurring Fees, liquidated damages, and attorneys' fees and costs.

Where the terms of a contract are clear and unambiguous, it is proper for the Court to determine the contract's meaning as a matter of law. *See Bethlehem Steel Corp. v. United States*, 270 F.3d 135, 139 (3d Cir. 2001). The "fundamental object in interpreting a contract is to ascertain the intent of the parties." *Compass Tech., Inc. v. Tseng Lab., Inc.*, 71 F.3d 1125, 1131 (3d Cir. 1995). Where the intent can be "cleanly extracted from the clear and unambiguous words that the parties have used, it is equally conventional wisdom that they are held to those words contained in the contract." *Id.*

In the instant matter, the Court finds that the Recurring Fees (Sections 7 and 18.1, and Schedule C), the termination (Section 11.2), the liquidated damages (Sections 12.1 and 18.2), and the attorneys' fees and costs (Section 17.4) provisions are clear and unambiguous. (*See* Fenimore Aff. Ex. A). Further, the Court notes the choice of law provision at Section 17.6 of the Agreement, stating that the parties consent to the application of New Jersey state law. (*See id.*).

    A.  <u>Recurring Fees</u>

Under Sections 7 and 18.1 of the Agreement, LHS agreed to pay Recurring Fees to THI. These provisions were clear and unambiguous. In spite of this, LHS stopped paying the Recurring Fees.[3] (D.E. No. 20-4, Brief in Support ("Mov. Br.") at 4–5). As a result, THI sent two letters to LHS outlining the arrears and warning of termination, (Fenimore Aff., Exs. B and C), and ultimately terminated the Agreement, (*id.*, Ex. D). Pursuant to the Agreement, THI is entitled to the Recurring Fees not paid prior to termination (and also to prejudgment interest as set forth in Section V.C, *infra*), which together total $151,821.22. (SUMF ¶¶ 34). As such, the Court grants summary judgment on Counts Four and Five.

    B.  <u>Liquidated Damages</u>

The termination provision set forth in Section 11.2 of the Agreement is clear and unambiguous. Pursuant to Section 12.l of the Agreement, LHS agreed that, in the event of a termination of the Agreement pursuant to Section 11.2, it would pay liquidated damages to THI in accordance with a formula specified in Section 18.2 of the Agreement. (*Id.* ¶¶ 21, 22). The liquidated damages provision is also clear and unambiguous.

A liquidated damages clause is valid where such a clause "constitute[s] a reasonable forecast of the provable injury resulting from the breach," and where harm "is incapable or very difficult of accurate estimate." *Wasserman's, Inc. v. Middletown*, 137 N.J. 238, 249 (1994) (citations omitted). The overall single test of validity of a liquidated damages clause is whether it is "reasonable under the totality of the circumstances." *Metlife Capital Fin. Corp. v. Washington*

---

[3] Even though LHS listed multiple affirmative defenses to the amended complaint, (*see* D.E. No. 17, Answer to Amended Complaint at 7–8), there is nothing in the record to support these defenses, and they nevertheless appear to be separate claims. Indeed, "[t]he alleged wrongs of plaintiff do not constitute affirmative defenses to defendants' non-payment of franchise fees." *Knights Franchise Sys., Inc. v. P.C.P.S. Corp.*, No. 06-5243, 2009 WL 3526229, at *3 (D.N.J. Oct. 21, 2009), *aff'd*, 420 F. App'x 155 (3d Cir. 2011) (citing *McDonald's Corp. v. Robert A. Makin, Inc.*, 653 F. Supp. 401, 403 (W.D.N.Y. 1986)). Thus, the Court is satisfied that the affirmative defenses do not create a genuine issue of material fact sufficient to defeat the motion for summary judgment. *See Celotex*, 477 U.S. at 324.

*Ave. Assocs. L.P.*, 159 N.J. 484, 495 (1999) (citation omitted). Liquidated damages clauses substantially similar to the clause at issue in this case have been enforced by way of summary judgment on numerous occasions in this district. (*See* Mov. Br. at 8–9) (listing cases).

Here, the liquidated damages clauses in sections 12.1 and 18.2 are clear and unambiguous and demonstrate a good faith attempt by the parties to reasonably forecast the loss resulting from early termination of the Agreement. Furthermore, the Court is satisfied that actual damages for breach of the Agreement are nearly impossible to estimate with certainty. (*See* Mov. Br. at 9–10). Since the liquidated damages clauses in sections 12.1 and 18.2 appear to be reasonable and enforceable, the Court finds that THI is entitled to the liquidated damages provided in the Agreement (and also to prejudgment interest as set forth in Section V.C, *infra*), which together total $69,439.21, (Fenimore Aff. ¶ 36), and grants summary judgment on Count Two.

### C. Prejudgment Interest

In determining the availability of prejudgment interest on state law claims, the Court will consider New Jersey state law, consistent with the Agreement's choice of law provision. Under New Jersey law, prejudgment interest "has been regarded . . . as compensatory—to indemnify the plaintiff for the loss of what the monies due him would [p]resumably have earned if payment had not been refused." *Rova Farms Resort, Inc. v. Investors Ins. Co. of Am.*, 65 N.J. 474, 506 (1974). Prejudgment interest may be applied to both liquidated and unliquidated damages. *Busik v. Levine*, 63 N.J. 351, 358-59 (1973).

Section 7.3 of the license agreement provides for prejudgment interest to be assessed at the rate of 1.5% per month. This provision is clear and unambiguous. As such, the Court grants THI its requested prejudgment interest, as set forth above.

D. Attorneys' Fees and Costs

Under New Jersey law, in a breach of contract action, legal expenses can be recovered if the contract between the parties so provides. *See Papalexiou v. Tower W. Condo.*, 167 N.J. Super. 516, 530 (Ch. Div. 1979). Again, attorneys' fees and costs are addressed in a clear and unambiguous provision of the Agreement. Section 17.4 states that: "[t]he non-prevailing party will pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement." Absent any countervailing considerations, the Court finds that THI is entitled to reasonable attorneys' fees incurred in connection with this action.

As set forth in the Certification of Mr. Couch, THI has incurred attorneys' fees in connection with this matter in the total amount of $7,800.00, which were charged by the firms of Clyde & Co US, LLP and LeClairRyan. (Couch Cert. ¶ 18). The Court is satisfied that the included billing records adequately show that the specific legal services provided by Clyde & Co US, LLP and LeClairRyan included preliminary consultations with the client, review of relevant documents, researching potential causes of action, drafting, revising, and finalizing the Complaint and Amended Complaint, ascertaining the identities and location of defendant, arranging for service of process, preparing written discovery requests, taking the deposition of defendant's representative, and preparation and submission of the instant application for summary judgment. (*See id.*, Ex. N). Additionally, THI has incurred expenses in connection with this matter in the amount of $682.90, which includes filing fees, reproduction expenses, telephone charges, services of process fees, postage and overnight courier expenses. (*See id.* ¶ 20 & Ex. N). Accordingly, the Court finds that THI is entitled to $7,800.00 in attorneys' fees and $682.90 in costs and expenses.

## VI. Conclusion

For these reasons, the Court GRANTS Plaintiff's motion for summary judgment. An accompanying Order follows this Opinion.

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**
